144 P.3d 574

**In the Interest of John DOE, Born on June 13, 2004, a Minor.**

**No. 27136.**

Intermediate Court of Appeals of Hawai'i.

June 16, 2006.

Herbert Y. Hamada, on the briefs, for Father–Appellant.

Patrick A. Pascual and Mary Anne Magnier, Deputy Attorneys General, on the briefs,

for Department of Human Services–Appellee.

BURNS, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by BURNS, C.J.

The alleged natural father (Father) of John Doe, born on June 13, 2004 (Child), appeals from the family court's[1] January 5, 2005 Order Awarding Permanent Custody, January 5, 2005 Letters of Permanent Custody, and January 28, 2005 Orders Concerning Child Protective Act. We affirm.

## BACKGROUND

Father and the mother (Mother) of Child are not married. Father has an untreated substance abuse problem and an unresolved issue of domestic violence.

In 1997, Father was convicted of the Unauthorized Control of a Propelled Vehicle. In 2000, when he violated a condition of his probation, he was incarcerated. For the abuse of Mother in October 2003, Father was convicted of Assault in the Third Degree. For Extortion in the First Degree and Burglary in the First Degree, Father was sentenced to probation for five years and incarceration for one year commencing March 21, 2004.

On August 4, 1999, in FC–S No. 97–04994, Mother's parental rights and duties regarding one of her (but not Father's) children were terminated.

On January 11, 2000, Father's parental rights and duties regarding one of his (but not Mother's) children were terminated. On June 19, 2001, Father's parental rights and duties regarding another of his (but not Mother's) children were terminated. Father admitted that he did not participate in substance abuse treatment or other services in the cases of these two children.

Child was born on June 13, 2004. Child was exposed to methamphetamines *in utero* and is a special needs child.

On June 21, 2004, the State of Hawai'i Department of Human Services (DHS) filed a petition for temporary foster custody of Child. On June 30, 2004, after a hearing, the petition was granted.

On August 6, 2004, the court ordered the June 16, 2004 Service Plan. In relevant part, this service plan required Father to "[e]stablish paternity by calling the Child Support Enforcement Agency at 587–4250." There is no indication in the record that Father complied with this order.

On September 9, 2004, the DHS filed a motion for permanent custody of Child.

On September 20, 2004, the court terminated Mother's parental rights and duties regarding three of her (but not Father's) children, the last of which was born on April 1, 2003.

On September 27, 2004, the court entered an order stating, in relevant part, that "Father's request for visits is denied without prejudice due to [Child's] health concerns. Father is entitled to a visit at a point in time when [Child's] health permits." On December 9, 2004, the court entered an order stating, in relevant part, as follows:

3   The Court asked DHS to arrange an in person visit at the day of trial on 01–05–05, depending on [Child's] health; Father shall have no contact with foster parents;

4   The court takes judicial notice of the facilities at OCCC [O'ahu Community Correctional Center], and it is not [an] appropriate place for a child with [Child's] fragile health, and the Court defers to the judgment of DHS.

On January 5, 2005, after a trial, the court entered an order terminating Mother's and Father's parental rights and duties regarding Child and awarding permanent custody of Child to the DHS. This order also stated as follows:

20   DHS shall obtain [Child's] birth certificate. If [Father] is not named on the birth certificate as [Child's] father, DHS may need to serve notice on any other putative fathers by publication.

At a hearing on January 28, 2005, the DHS noted that Father was not named on Child's birth certificate and requested permission to

1.   Judge Paul T. Murakami presiding.

serve "unknown natural father" by publication. At the conclusion of the hearing, the court entered an order denying Father's motion for reconsideration and "Authorizing Service by Publication" "to *UNKNOWN NATURAL FATHER*".[2]

Father filed a notice of appeal on February 23, 2005. On March 31, 2005, the court entered the Findings of Fact and Conclusions of Law (FsOF and CsOL). This case was assigned to this court on September 26, 2005.

## DISCUSSION

### I.

■ The FsOF and CsOL describe Father as the "alleged natural father of [Child]." We raise two questions *sua sponte*. The first question is whether Father had any parental rights and duties? The answer is that he may have been a "concerned natural father" or, if not, possibly could have become a "concerned natural father" prior to the adoption of Child. The second question is whether the family court is authorized to terminate such an alleged father's parental rights and duties? The answer is yes because otherwise it would be possible for the alleged father to unreasonably delay the process, contrary to the best interests of the child.

Hawaii Revised Statutes (HRS) Chapter 587 is Hawai'i's Child Protective Act. HRS § 587–32 (1993) states, in relevant part:

**Summons.** (a) After a petition has been filed, the court shall issue a summons requiring a child's family member or members who have legal or physical custody of the child at the time of the filing of the petition to bring the child before the court at the temporary foster custody hearing or on the return date set forth in the summons. In addition, any legal parent, the natural mother (unless the child has been the subject of an adoption), the adjudicated, presumed, or concerned natural father of the child as defined under section 578–2 (unless the child has been the subject of an

adoption), and other persons who are to be parties to the child protective proceeding at the time of the filing of the petition also shall be summoned, in the manner provided in this section.

. . . .

(d) The summons shall state: "YOUR PARENTAL AND CUSTODIAL DUTIES AND RIGHTS CONCERNING THE CHILD OR CHILDREN WHO ARE THE SUBJECT OF THE ATTACHED PETITION MAY BE TERMINATED BY AWARD OF PERMANENT CUSTODY IF YOU FAIL TO APPEAR ON THE DATE SET FORTH IN THIS SUMMONS."

HRS § 587–73 (Supp.2005) states, in relevant part:

**Permanent plan hearing.** (a) At the permanent plan hearing, the court shall consider fully all relevant prior and current information pertaining to the safe family home guidelines, as set forth in section 587–25, including but not limited to the report or reports submitted pursuant to section 587–40, and determine whether there exists clear and convincing evidence that:

(1) The child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 are not presently willing and able to provide the child with a safe family home, even with the assistance of a service plan;

(2) It is not reasonably foreseeable that the child's legal mother, legal father, adjudicated, presumed, or concerned natural father as defined under chapter 578 will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from the date upon which the child was first placed under foster custody by the court[.]

---

**2.** All questions relating to this action by the family court are irrelevant to this court's decision in this case.

The title of HRS Chapter 578 is "Adoption". HRS § 578–2 (Supp.2005) states as follows:

**Consent to adoption.** (a) Persons required to consent to adoption. Unless consent is not required or is dispensed with under subsection (c) hereof, a petition to adopt a child may be granted only if written consent to the proposed adoption has been executed by:

(1) The mother of the child;

(2) A legal father as to whom the child is a legitimate child;

(3) An adjudicated father whose relationship to the child has been determined by a court;

(4) A presumed father under section 578–2(d);

(5) A concerned natural father who is not the legal, adjudicated, or presumed father but who has demonstrated a reasonable degree of interest, concern or responsibility as to the welfare of a child, either:

  (A) During the first thirty days after such child's birth; or

  (B) Prior to the execution of a valid consent by the mother of the child; or

  (C) Prior to the placement of the child with adoptive parents;

whichever period of time is greater;

(6) Any person or agency having legal custody of the child or legally empowered to consent;

(7) The court having jurisdiction of the custody of the child, if the legal guardian or legal custodian of the person of the child is not empowered to consent to adoption;

. . . .

(c) Persons as to whom consent not required or whose consent may be dispensed with by order of the court.

(1) Persons as to whom consent not required:

  . . . .

  (E) A natural father who was not married to the child's mother at the time of the child's conception or birth and who does not fall within the provisions of subsection (a)(3), (4), or (5);

  (F) A parent whose parental rights have been judicially terminated under the provisions of sections 571–61 to 571–63, or under the provisions of any other state or other law by a court or other agency having jurisdiction to take the action;

. . . .; and

  (K) A parent whose parental and custodial duties and rights have been divested by an award of permanent custody pursuant to section 587–73.

(2) Persons whose consent may be dispensed with by order of the court. The court may dispense with the consent of a parent who comes within subsection (a)(3), (4), or (5) herein, upon finding that:

  . . . .;

  (B) The father is a concerned father as provided by subsection (a)(5), herein, and has not filed a petition to adopt the child, or the petition to adopt the child filed by the father has been denied; or

  (C) The father is an adjudicated, presumed, or concerned father as provided by subsections (a)(3), (4), or (5), herein, and is not a fit and proper person or is not financially or otherwise able to give the child a proper home and education.

(d) Presumption of paternity. A man is presumed to be the natural father of a child if:

. . .; or

(5) He acknowledges his paternity of the child in writing filed with the department of health, which shall promptly inform the mother of the filing of the acknowledgment, and she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the department of health. If another man is presumed under this section to be the child's father, acknowledgment may be effected only with the written consent

of the presumed father or after the presumption has been rebutted. If the acknowledgment is filed and not disputed by the mother and if another man is not presumed under this section to be the child's father, the department of health shall prepare a new certificate of birth in accordance with chapter 338.

(e) Notice of hearing; minor parent; consent authorizing selection of adoptive parents. No hearing of a petition for adoption shall be had unless each of the living parents of the child who falls within the provisions of subsection (a) and who has not consented to the proposed adoption, but who is alleged to come within the provisions of subsection (c)(1)(A), (B), (C) and (D) or (c)(2) of this section, and any man whose name appears as father on the child's birth certificate, shall have had due notice, actual or constructive, of the allegations of the petition and of the time and place of the hearing thereof. Such notice need not be given to any parent whose parental rights have been legally terminated as hereinabove provided or whose consent has been filed with the court.

HRS § 587–32(a) requires a summons to be issued to a "concerned natural father of the child as defined under section 578–2[.]" HRS § 578–2(a)(5)(C) defines the ambit of the phrase "concerned natural father". It appears that the DHS, in reasonable anticipation of the possibility that Father then was, or some time prior to the adoption of Child might become, a "concerned natural father," validly and appropriately made him a party to this case and thereby caused his potential parental rights and duties to be subject to termination in this case.

## II.

HRS § 587–21 (Supp.2005) states as follows:

**Investigation.** (a) Upon receiving a report that a child is subject to imminent harm, has been harmed, or is subject to threatened harm, the department shall cause such investigation to be made as it deems to be appropriate . . . .

(b) Upon satisfying itself as to the course of action that should be pursued to best accord with the purpose of this chapter, the department shall:

. . . .

(3) Assume temporary foster custody of the child pursuant to section 587–24(a) and file a petition with the court under this chapter within three working days, excluding Saturdays, Sundays, and holidays, after the date of the department's assumption of temporary foster custody of the child; or

(4) File a petition or ensure that a petition is filed by another appropriate authorized agency in court under this chapter.

■ On Monday, June 14, 2004, the DHS assumed temporary foster custody of Child. HRS § 587–21(b)(3) required the DHS to file a petition on or before Thursday, June 17, 2004. It did not do so until Monday, June 21, 2004. Father contends that the family court did not have jurisdiction in this case because the petition for temporary foster custody was not filed within the time allowed by HRS § 587–21(b)(3). We disagree. For obvious reasons, the time requirement specified in HRS § 587–21(b)(3) is not a jurisdictional time requirement.

## III.

■ Father contends that (1) the DHS (a) never required Father to do services that would allow him to provide a safe family home for Child, and (b) failed to provide him with the opportunity to comply with the service plan, and (2) the family court erred when it concluded that the DHS made reasonable efforts to allow Father the opportunity to provide a safe family home for Child. We disagree.

The June 16, 2004 Service Plan required Father to "[e]stablish paternity by calling the Child Support Enforcement Agency at 587–4250." There is no indication in the record that he complied with this requirement. Moreover, the record supports the following FsOF:

58. Based on Father's history of noncompliance that led to the termination of

his parental rights to two of his older children, and his history of non-compliance in the criminal justice system, Father will not be able to address his own needs and safety issues, and acquire to [sic] skills to raise [Child] with his identified special needs and other possible special needs in the reasonably foreseeable future.

59. [Child's] GAL agreed with DHS' assessment and recommendation for permanency planning for [Child], with regards to Father.

## CONCLUSION

Accordingly, we affirm the family court's January 5, 2005 Order Awarding Permanent Custody, January 5, 2005 Letters of Permanent Custody, and January 28, 2005 Orders Concerning Child Protective Act.